FILED
04 SEP 30 PM 12:07
ENTERED
SEP 30 2004

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

RAY ROBBINS, II, )
Plaintiff, )
v. ) CIVIL ACTION NO. 02-PWG-0215-M
WILLIAM J. SHEPPARD, JR., )
Defendant. )

MEMORANDUM OF DECISION

On January 28, 2002, Ray F. Robbins, II, a citizen of the state of Alabama, initiated this civil action with a complaint alleging *inter alia* the breach of a real estate contract by William J. Sheppard, Jr., a citizen of the state of South Carolina. (Document #1).[1] The matter is currently before the court on the cross-motions for summary judgment of plaintiff and defendant (documents #59 and #60).[2] A third-party, the Cincinnati Insurance Company, remains nominally a party in the action pursuant to a complaint in intervention. (Document #40).[3] The matter is before the undersigned magistrate judge for disposition upon the express consent of all remaining parties. (28 U.S.C. § 636(c); document #49, the consent of Cincinnati, Robbins and Sheppard). (See also document #50).

---

1/ A number of cross-claims and/or counterclaims involving other individuals and entities including John C. Betts, Kenneth Northrup, Cliff Druet and Alabama Forrest Productions were filed and have been resolved through diligent efforts of counsel. (See documents #47, #52, #54 and #68/57).

2/ By agreement of the parties, Mr. Robbins has amended his complaint (document #67/58) and both Robbins and Sheppard have dismissed certain claims and defenses and agreed to submit the potentially dispositive contract claim to the court on cross-motions for summary judgment. (Document #57 and #67).

3/ Cincinnati intervened because of a homeowner's liability insurance policy with Ray F. Robbins. At the time the complaint in intervention was filed, counter-claims and cross-claims existed which related to alleged tortious conduct by Robbins in addition to the pending breach of contract question. With the dismissal of such claims and in light of the present posture of the case both the interest and exposure of Cincinnati more likely than not has diminished.



JURISDICTION

This court has subject matter jurisdiction under the diversity jurisdiction statute, 28 U.S.C. § 1332, as there exists complete diversity between the parties in the amount in controversy at the time this action was filed exceeded $75,000. Personal jurisdiction and venue are uncontested.

SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The applicable Rule 56 standard is not affected by the filing of cross-motions for summary judgment. *Gerling Global Reinsurance Corporation of America v. Gallagher*, 267 F.3d 1228, 1233 (11th Cir. 2001). The Eleventh Circuit has explained that "[c]ross-motions for summary judgment will not, in themselves, warrant the court granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984). However, it is also true that cross-motions maybe probative of the absence of factual dispute where they reflect general agreement by the parties as to the dispositive legal theories and material facts. *Id.* at 1555-56.[4]

DIVERSITY JURISDICTION, APPLICABLE LAW

In the present case, the United States District Court for the Northern District of Alabama exerts federal diversity jurisdiction over the parties in this action. As set forth by the Supreme Court in *Erie Railroad Company v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), diversity jurisdiction mandates the application of state substantive law and federal procedural law. Substantive Alabama contract law is dispositive of the cross-motions for summary judgment.

---

4/ Moreover, while styled as a motion for summary judgment Mr. Sheppard's motion more closely resembles a response to Mr. Robbins' motion in that Sheppard seeks to avoid a judgment of liability rather than obtain one.

## BACKGROUND

Plaintiff Ray Robbins is an attorney licensed by the state of Alabama with a general civil practice which includes real estate transactions. (Document #60, unnumbered exhibit deposition of Mr. Robbins at p.10). In April of 2001 William J. Sheppard, Jr. was in Alabama to inspect a number of tracts of land which he considered purchasing. (Document #65). One of the parcels was identified as the "Stevenson" tract which was owned by Ray Robbins and Jon Betts.[5] It appears undisputed that Sheppard intended to purchase land and harvest the timber. It is undisputed that on June 20, 2001 Sheppard, Betts and Robbins entered into a contract for the "Stevenson" tract. (Document #60, unnumbered exhibit 2). (See also document #59, unnumbered exhibit 2).[6]

## THE ISSUE

In the initial complaint, Mr. Robbins contended that Mr. Sheppard "... did not notify [Robbins] in writing within thirty days as to whether [he] will proceed to closing." He also contended that "[Sheppard] [had] breached the contract by failing to close and failing to make the payment of the earnest money." In his amended complaint, (document #67/58), Mr. Robbins averred that "[Mr. Sheppard] [had] breached the contract by failing to make the payment of the earnest money" and deleted the fourth full paragraph of page 2 of the original complaint which had raised additional claims sounding in fraud. By agreement Mr. Sheppard has also amended his answer. The only issue to be resolved in this action is whether Mr. Robbins is entitled to a judgment in the amount of $60,000.00 under the terms of the June 20, 2001 contract.

---

5/ Mr. Betts is not a party to the present motions.

6/ Sheppard entered into at least two contracts for the purchase of real property on June 20, 2001. The total purchase for all tracts of land was $7,000,000.00 . A $100,000.00 earnest money check was tendered in one transaction. A second transaction memorialized by the contract at issue here related to the "Stevenson" tract and involved $60,000.00 in "earnest money." (Document #65).

THE CONTRACT

The contract material to the cross-motions for summary judgment is dated June 20, 2001 and is signed by Mr. Sheppard as purchaser and both Mr. Betts and Mr. Robbins as sellers. (Document #59 and #60).[7] With regard to one transaction, Paragraph 3 of the contract read:

> 3. The purchase price shall be $2,700,000.00 payable as follows:
>
> Earnest money to Seller ... $60,000.00. Cash on closing, $2,640,000.00. The earnest money shall be paid with the execution of this agreement by check of the purchaser in the sum of $60,000.00 which seller agrees to hold for 30 days from this date before negotiating the check.
>
> * * * *

Paragraph 7 of the agreement provided that:

> 7. Purchaser shall have the right to market the timber on said property for 30 days from this date; however, no timber shall be cut or removed from said property, until seller has been paid the full purchase price. Before the end of the 30th day this date, purchaser shall notify seller in writing whether purchaser shall proceed with closing. In the event purchaser does not want to proceed with closing, then seller shall retain the earnest money in the sum of $60,000.00 and seller shall have no right to specific performance. In the event purchaser gives notice to proceed with closing, then the sale shall be closed and the deed delivered within sixty (60) days of the execution of this contract. (emphasis added).

Paragraph 16 provided:

> Should the Seller breach this contract, then purchaser shall be entitled to a refund of the earnest money and shall be reimbursed from the seller for all reasonable expenses incurred by purchaser...."

---

7/ The contract provided that the seller(s) Betts and Robbins conveyed "one-half interest in the coal deposit located on said property and a full interest in all other minerals and mineral rights to the property." (The contract at ¶ 2).

> Paragraph 16 provides this contract states the entire agreement between the parties and any other negotiations, statements or representations are hereby merged into this contract and this contract fully expresses the agreement of the parties hereto.
>
> Paragraph 17 provides this contract may not be changed or terminated orally as this contract is intended to be binding upon the parties, their heirs, executors, administrators, personal representatives and assigns.

(Document #59 and #60).

ALABAMA LAW- CONTRACTS GENERALLY

"The intention of the parties must be derived from the language of the contract." *General Aviation, Inc. v. Aerial Servs., Inc.*, 700 So.2d 1385, 1387 (Ala. Civ. App. 1987). "If the terms within a contract are plain and unambiguous, the construction of the contract and its legal effect become questions of law for the court and, when appropriate, may be decided by summary judgment." *Dill v. Blakeney*, 568 So.2d 774 (Ala. 1990). However, if the terms of the contract are ambiguous in any respect, the determination of the true meaning of the contract is a question of fact to be resolved by a jury. *Id.* The question of whether a contract is ambiguous is a question of law for the court. *McDonald v. U.S. Die Casting & Development Co.*, 885 So.2d 853 (Ala. 1991). An agreement is ambiguous if it is susceptible to more than one meaning. *Bain v. Gartrell*, 666 So.2d 523 (Ala. Civ. App. 1995). However, an agreement is not rendered ambiguous simply because the parties assign different meanings to it. *Wayne J. Griffin Electric, Inc. v. Dunn Construction Co.,* 622 So.2d 314 (Ala. 1993).

Alabama law provides that any agreement for the sale of lands, or any interest therein "is void unless such an agreement or some note or memorandum thereof expressing consideration is in writing." *Alabama Code* § 8-9-2 (1975). The Alabama statute of frauds renders a contract not expressed in writing which involves the sale of real property to be void. *Pate v. Billy Boyd Realty & Construction*, 699 So.2d 186 (Ala. Civ. App. 1997). "The general rule of contract law is that, if a written contract exists, the rights

of the party are controlled by that contract and parol evidence is not admissible to contradict, vary, add to, or subtract from its terms." *Clark v. Albertville Nursing Home, Inc.*, 545 So.2d 9, 11 (Ala. 1989). However, the parol evidence rule allows the "introduction of extrinsic evidence in the event of fraud, mistake, or ambiguity." *Rime-Shatten Development Co. v. Birmingham Cable Communications, Inc.*, 569 So.2d 332, 334 (Ala. 1990) (citing *League v. Giffin*, 347 So.2d 1332 (Ala. 1977)). Further, under Alabama law, once the parties to a contract have reduced their agreement to writing, all prior statements, promises, negotiations are merged into the resulting written document. *Guilford v. Spartan Foods Systems, Inc.*, 372 So.2d 7 (Ala. 1979) (Noting that it is presumed at law that "all prior negotiations are merged into the written contract which purports to cover the entire transaction."). Also Alabama law is clear that extrinsic evidence relating to the alleged "true intent" of the parties is not admissible if the written document is clear and unambiguous. *Kerrigan v. Sherrer*, 535 So.2d 74, 75-76 (Ala. 1988). A court may resort to parol evidence upon a showing that the contract language contains a "latent ambiguity." *Cathbake Investment Co. v. Fisk Electric Company, Inc.*, 700 F.2d 654, 656 (11th Cir. 1983). "An ambiguity is latent when the language employed is clear and intelligible and suggests but a single meaning, but some extrinsic fact or extraneous evidence creates a necessity for interpretation or a choice among two or more possible meanings." *Thomas v. Principal Financial Group*, 566 So.2d 735 (Ala. 1990). If a latent ambiguity exists, parol evidence may be admitted for the purpose of explaining or clarifying the language revealed to be ambiguous, but not for the purposes of uncovering the parties alleged "true intent." *Gafford v. Colby*, 512 U.S. So.2d 1356, 1363 (Ala. 1987). As the Supreme Court of Alabama has explained:

> Such evidence is received, not for the purpose of importing into the writing an intention not expressed therein, but simply with the intention of elucidating the meaning of the words employed; and in its admission, the

> line which separates evidence which aids in the interpretation of what is in the instrument, from direct evidence of the intention independent of the instrument, must be kept steadily in view; the duty of the court being, to declare the meaning of what is written in the instrument, not as to what was intended to be written.

*Gibson v. Anderson*, 265 Ala. 553, 92 So.2d 692, 695 (1957).

Each party has submitted extrinsic evidence. However, for the reasons more fully set forth below consideration of such material and a resort to parol evidence is not required for the disposition of the pending motion.[8]

APPLICATION OF ALABAMA LAW

The express language of the contract at issue identifies the $60,000.00 in dispute as "earnest money." For example, paragraph 7 of the contract provides that in the event Sheppard "does not want to proceed with closing [Robbins] shall retain the earnest money...." While the language is straight forward, Mr. Robbins avers in his motion for summary judgment that "although the contract was called a 'real estate contract' and although the $60,000.00 was referred to as 'earnest money,' by the terms of the contract the agreement was the purchase by Sheppard of an exclusive option to purchase the property for a period of 30 days with the purchase price for that option being $60,000.00." (Document #59, p.3). Mr. Robbins contends that Sheppard breached the contract when he failed to pay $60,000.00 on July 20, 2001. *Id.*, p.5. Mr. Sheppard, however, contends that "[he] never agreed that the ... $60,000.00 check [he] gave to Robbins was some mere option fee ...." He contends that "this money was earnest money, not an option fee." (Documents #62; #65).

---

8/ This is so because while the parties have in this action had earlier in this litigation disputed such questions as whether there had been a misrepresentation of the value of timber on the property, such issues ultimately do not impact the contractual obligations of the parties nor do these collateral issues and the facts upon which they are predicated render a provision of the contract to be susceptible to more than one meaning.

Under Alabama law, "earnest money" "... consists of a deposit of part payment on the purchase of property to be consummated in the future." *Stewart v. Robertson*, 490 So.2d 13, 14 (Ala. Civ. App. 1986) (citing *Eaton v. Sadler*, 215 Ala. 161, 110 So. 10 (1926) and § 14 Words and Phrases). "Earnest money" and "option money" are not necessarily conceptually interchangeable. *Id.* An option to purchase property is a right given by the owner to the optionee. *Shaffer v. Reed*, 437 So.2d 98, 99 (1983). In an option contract, a prospective purchaser buys the "right to purchase" a specific tract of land for a limited period of time. *Stewart v. Robinson*, 490 So.2d at 14. If, on the other hand, the contract is one for the purchase and sale of a specific tract of land, each party is obligated to perform. That is, the seller must sell and the buyer must buy. In the case of an option, however, no binding obligation to purchase exists. *Id.* It is significant under Alabama law that with respect to a real estate contract to buy and sell real property either a seller or buyer may seek and obtain specific performance of a contract requiring, *inter alia*, the purchase of land by the defaulting buyer even if the contract also calls for liquidated damages in the form of a forfeited earnest money deposit. No such enforceable contract right to specific performance exists with an option to purchase until after the option has been exercised. *Id.*

In the present case it is the performance requirements and the express provisions of the contract which control the resolution of this litigation not the words used by the parties. It has long been settled law in Alabama "that the nature of a contract is to be determined by the terms and conditions of the contract itself and not by the name given to it. It is not a question of the what the parties call a contract, but what they put in the contract, because law regards substance and not form." *McGuire v. Andre*, 259 Ala. 109, 65 So.2d 185, 189 (Ala. 1953) (citing *inter alia*, *D. M. Ferry & Co. v. Hall*, 188 Ala. 178, 66 So. 104 [(Ala. 1904)] discussing the distinction between an option contract and a sales contract.) See also *Madison National Bank v. St. Paul Title Insurance Company*, 389 F. Supp. 629, 633 n.3 (N.D. Ala.

1975) (Grooms, J., observing that *McGuire* distinguished a contract of sale from an option.) In the end, the construction of the June 20, 2001 contract is controlled by the obligations incurred by each signatory as imposed by the express terms of the contract without regard to the labels assigned by the parties. If the obligations incurred are unambiguous and are not otherwise rendered ambiguous by relevant extrinsic evidence, the contract must be enforced as written.

The June 20, 2001 contract is clear and unambiguous with respect to the duties and obligations of the contracting parties. Sheppard agreed that he would pay $60,000.00 and if he proceeded to close on the property he would pay an additional $2,640,000.00 cash at the time of closing. Robbins agreed to hold Sheppard's $60,000.00 check for a period of 30 days before negotiating the instrument. Sheppard obtained the express right to market, but not remove timber from the subject property for a period of 30 days. The contract clearly and unequivocally stated that "<u>before the end of the 30th day</u> from this date [June 20, 2001] [Sheppard] <u>shall</u> notify [Robbins] <u>in writing</u> whether [he] shall proceed with closing. In the event [Sheppard] does not want to proceed with closing then [Robbins] shall retain the earnest money in the sum of $60,000.00 and [Robbins] <u>shall have no right to specific performance</u>. In the event [Sheppard] gives notice to proceed with closing, the sale shall be closed and the deed delivered within sixty (60) days from the date of the execution of this contract." (Document #68/#57, Exhibits to Sheppard's motion for summary judgment). (emphasis added). The contract specifically requires that in order to proceed to closing Sheppard was to notify Robbins in writing "before the end of the 30th day from [June 20, 2001]...." Moreover, the contract provided that if Sheppard did not want to "proceed with closing ... [Robbins] had no right to specific performance...."

Initially, Mr. Sheppard argues that he "... believed August 1, 2001 was still in the time frame for him to tell Robbins and Betts that he would not proceed to sale.... August 1 was still within 30 <u>business</u>

days from the date of that agreement...." (Document #62) (emphasis added). The express language of the contract belies Mr. Sheppard's contention that the parties agreed that the 30 day time period was intended to mean 30 business days. The contract not only specifically refers to 30 days without further modification or elaboration but also makes clear that the operative date is "the 30th day from [June 20, 2001]...." The same degree of specificity is included in the closing period provisions in which the parties agreed that the closing would occur within 60 days "from the execution of this contract." Nothing in the language of the agreement suggests that the parties intended the phrase thirty days to mean thirty business days. Nothing in the contract nor indeed in the extrinsic materials submitted by either party implies that the express provision does not mean what it says. The use of such simple time frames is a common element of contract including contracts involving real estate. See e.g., *Holman v. Joe Steele Realty, Inc.*, 485 So.2d 1142 (Ala. 1986). The clear and plain meaning of the contract provisions are to be given effect and the parties are presumed to have intended what the terms clearly state. *Strickland v. W.G. Rahaim*, 549 So.2d 58 (Ala. 1989).

The contract required Sheppard to notify Robbins in writing by July 21, 2001 "whether [he] shall proceed to closing." What provisions did the parties make "in the event [Sheppard] [did] not want to proceed with closing" or did not notify Robbins in writing of his intent to close within thirty days? The contract makes clear Sheppard's obligation. If Sheppard did not tell Robbins that he wanted to close by July 21, 2001 Robbins would keep the $60,000.00.[9] Had Sheppard notified Robbins that he intended to close the $60,000.00 would have become a partial payment before the purchase price of the Stevenson

9/ Presumably after negotiating the check.

tract under paragraph three (3) of the contract.[10] Under the express relevant provisions of the contract, Sheppard was obligated to notify Robbins that he intended to close on the Stevenson property. The notice required was to be made in writing before July 21, 2001. If Sheppard did not do so, the $60,000.00 was due and payable to Robbins on July 21, 2001. Whether characterized as an option or not, the obligation assumed by Sheppard required the payment without regard to whether Sheppard intended to close or not. After notice of the intent to close, Robbins had agreed to apply the $60,000.00 to the ultimate purchase price. An important component of the agreement was Robbins surrendered his right to seek specific performance if sheppard did not intend to close. It is the absence of that obligation as set out in paragraph seven (7) which clearly supports the characterization of the notice obligation as an option. *Shaffer v. Reed*, 437 So.2d at 99. The fact that the contract did not use the work "option" does not vary the terms of the agreement nor the obligations imposed by the party. The contract is enforceable as written. On July 21, 2001, having failed to notify Mr. Robbins of his intent to close within thirty days of the execution of the June 20, 2001 contract, Mr. Sheppard owed Mr. Robbins $60,000.

<u>PENALTY-LIQUIDATED DAMAGES</u>

Even Mr. Sheppard does not contend that he never had an obligation to pay $60,000.00 or that the promised payment of $60,000.00 was not an element of consideration in the contract. Instead he contends that because the $60,000.00 could be considered only as a down payment, a position not supported by the text of the contract, the forfeiture of the "earnest money" constitutes an unlawful penalty and is void as a matter of public policy.

---

10/ The purchase price shall be $2,700,000.00 payable as follows:
Earnest money to seller........... $60,000.00
Cash on closing.................. $2,640,000.00

Paragraph 11 of the contract provided that

> Should [Sheppard] fail to carry out this contract, in accordance with its provisions, the earnest money paid by [Sheppard] shall be forfeited as liquidated damages and shall become the property of [Robbins].

Mr. Sheppard relies in substantial part upon *Cook v. Brown*, 408 So.2d 143 (Ala. Civ. App. 1981) (*Cook II*) and *Cook v. Brown*, 428 So.2d 59 (Ala. Civ. App. 1982) (*Cook III*), in support of his contention that paragraph 11 is void. *Cook II* and *III* both note that under Alabama law "determining whether a liquidated damages provision is valid is a "question of law to be determined by the trial court based on the facts of each particular case." *Cook v. Brown*, 408 So.2d at 144. (citations omitted). As made clear in *Cook*, there is no hard and fast rule in Alabama that a forfeiture of earnest money provision in a real estate contract is void. Indeed, the Alabama appellate courts have regularly upheld such agreements. E.g., *Archer v. Hall*, 721 So.2d 194 (Ala. Civ. App. 1998); *Prouty Real Estate Services v. Merchants National Bank of Mobile*, 521 So.2d 71 (Ala. Civ. App. 1988). See also, *dicta* in *Brett v. Wall*, 530 So.2d 797, 798 (Ala. 1988). Moreover, unlike the plaintiff in *Cook*, Robbins did not seek to retain the earnest money and also sue for breach of contract seeking actual damages. While the initial complaint did raise fraud claims those claims related specifically to Sheppard's alleged failure to pay the $60,000.00 and did not present an independent claim for damages <u>from</u> the failure to close. A review of the evidentiary materials appended to Mr. Sheppard's motion construed in the light most favorably to Mr. Sheppard does not establish that the liquidated damages clause, if indeed applicable to this litigation, is a penalty. The relative sophistication of the parties to this contract, the process of estimating value of the timber and the difficulty in quantifying the loss to Mr. Robbins from a failure to close establishes that these parties considered the $60,000.00 as liquidated damages rather than a penalty. Clause 11 does not offend

Alabama policy. See generally *Sutton v. Epperson*, 631 So.2d 832, 836 (Ala. 1993). *Alverson v. Trans-Cycle Industries, Inc.*, 726 So.2d 670, 676-77 (Ala. Civ. App. 1998) (*cert. denied*).

After consideration of the record, the extraordinarily useful and well written briefs of each party together with the applicable law it is ORDERED that Judgment ENTER in the amount of Sixty Thousand ($60,000.00) Dollars in favor of plaintiff Ray Robbins and his motion for summary judgment be GRANTED. The motion of William Sheppard for summary judgment is DENIED.[11]

By separate order judgment will enter.

As to the foregoing it is SO ORDERED this the 30th day of September, 2004.

PAUL W. GREENE
CHIEF MAGISTRATE JUDGE

[11] Mr. Sheppard also contends that as Mr. Robbins owned only one-half interest in the Stevenson tract the proper judgment would be $30,000.00, not $60.000.00. Mr. Betts may have a cause of action against Robbins if Mr. Sheppard is correct. Mr. Sheppard may assert collateral estoppel against Betts should he seek to proceed against Sheppard.